UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| T.R., a minor child, by and through his parent, ROSA EVANS, and ROSA EVANS, individually,<br><br>PLAINTIFFS<br><br>vs.<br><br>PAPILLION LA VISTA COMMUNITY SCHOOLS<br><br>DEFENDANT | CASE No. _____<br><br><br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

## I.   INTRODUCTION

1. This action arises under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"); Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, et seq. ("ADA"); and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"). This action seeks review of the decision of the special education due process Hearing Officer, dated August 2, 2023.

2. T.R. is a 16-year-old minor child, and he brings this action by and through his parent, Rosa Evans, who is also an individual plaintiff.

3. T.R. is a student in the Papillion La Vista Community Schools ("PLCS") public school district.

4. T.R. is an 11th grade student who has a medical diagnosis of autism. He has an Individualized Education Program ("IEP") with PLCS. T.R. is very intelligent, but due to his autism, he experiences several adverse effects involving social and communication

1

skills, executive functioning skills, impulsivity, and emotional distress. T.R. experiences difficulties with anxiety, coping, rigidity, planning and organization, and changes in routines and schedules. He sometimes engages in purposeless and repetitive behaviors, he often overreacts to sensory stimuli, he often has difficulty paying attention and ignoring distractions, and he sometimes experiences "meltdowns" or difficulties with behavioral control when he is met with situations that are overwhelming for him.

5. T.R. lives within the boundaries of PLCS, the public school district responsible for providing an education to T.R.

6. Although T.R. is now 16, he does not go for walks in the community alone, and members of his extended family have observed him dart in front of moving cars on roads and in parking lots on multiple occasions during the past year.

7. Managing stressful situations, including the prospect of navigating traffic as a pedestrian independently, causes substantial stress and difficulty for T.R. because of the impacts of his autism.

8. T.R. began attending Papillion La Vista High School as a freshman in August of 2021.

9. Beginning in August of 2021, T.R.'s mother asked PLCS multiple times to provide district transportation to and from school for T.R. because of his disability-related difficulties and the challenges he would experience in walking to and from school.

10. The District has refused these requests for district transportation for T.R. to and from Papillion La Vista High School at all times.

11. Due to PLCS's refusal to transport T.R., his mother has had to rely on extended family members and friends to provide transportation to T.R., at a personal expense of $3,320.

12. Transportation to and from school is a necessary related service for T.R. pursuant to 20 U.S.C. § 1401(26) and 92 Neb. Admin. Code § 51-003.49.

13. Transportation to and from school would be a reasonable modification and reasonable accommodation for T.R. pursuant to the ADA and Section 504, respectively, because of his disability-related needs.

14. Following PLCS's refusals to provide district transportation to T.R., his mother filed a special education due process case against PLCS to compel it to provide transportation to T.R. as a related service and to reimburse her for her transportation costs. The due process Hearing Officer denied T.R.'s mother's requests and ruled in favor of the Defendant school district.

**II. PARTIES**

15. T.R. is a 16-year-old student who resides with his mother within the boundaries of the Papillion La Vista Community Schools district. He is a citizen of the United States. T.R.'s initials are used for privacy reasons because he is a minor.

16. Rosa Evans is T.R.'s mother. She resides with T.R. in La Vista, Nebraska, and is also a citizen of the United States.

17. T.R. qualifies for special education and related services under the eligibility category of autism. He is a "child with a disability" as defined in the IDEA, 20 U.S.C. § 1401, and its implementing regulations, 34 C.F.R. § 300.8, as well as 92 Neb. Admin Code. § 51-003.08.

18. T.R. qualifies for protection from discrimination under Title II of the ADA because he is an individual with a disability as defined by 28 C.F.R. § 35.108.

19. T.R. also qualifies for protection from disability-based discrimination pursuant to Section

504. He is a "qualified individual with a disability" pursuant to 29 U.S.C. § 794 and a "handicapped person" as defined in the regulations for Section 504, 34 C.F.R. § 104.3(j), because he has autism.

20. PLCS is a public school district and is responsible for the administration of education for the public schools within its boundaries. PLCS is a "local education agency" within the meaning of 20 U.S.C. § 1401(9).

21. PLCS is therefore required by federal and Nebraska law to comply with the IDEA.

22. PLCS is a "public entity" as defined in the ADA, 42 U.S.C. § 12131(1), and 28 C.F.R. § 35.104, and therefore must comply with Title II of the ADA.

23. PLCS is a program or activity receiving federal financial assistance as defined in Section 504, 29 U.S.C. § 794, and is a "recipient" of federal funds as defined in 34 C.F.R. § 194.03(f). PLCS must therefore comply with Section 504 of the Rehabilitation Act.

### III. JURISDICTION AND VENUE

24. This is an action for Judicial Review pursuant to 20 U.S.C. § 1415(i)(2)(A) and 92 Neb. Admin Code. § 55-009. As such, this is a Complaint under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq. and its state counterpart, 92 Neb. Admin Code. § 51. Additionally, this is a Complaint pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

25. Jurisdiction is based on 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States. Jurisdiction is also based on the IDEA, 20 U.S.C. § 1415(i)(3); the ADA, 42 U.S.C. §12133; and Section 504, 29 U.S.C. § 794(a).

26. This Court has jurisdiction to issue a declaratory judgment and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

27. Plaintiffs have fully exhausted administrative remedies as required by the IDEA, 20 U.S.C. § 1415(f) and (g).

28. This civil action is timely filed under 20 U.S.C. §1415(i)(2)(B) and 92 Neb. Admin. Code § 55-009, as the decision of the Hearing Officer was rendered on August 2, 2023, and this action is filed within 90 days of that decision.

29. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because PLCS transacts business, is found, and has agents in this District, and because the events or omissions giving rise to the Plaintiffs' claims occurred and continue to occur in this District.

### IV. STANDARD OF REVIEW

30. With respect to the decision of the hearing officer in an IDEA due process case, "the aggrieved party may seek review of that decision by bringing an action in federal district court, which reviews the administrative record and any additional evidence requested by the parties. 20 U.S.C. § 1415(i)(2). The district court must make its decision independently, based on a preponderance of the evidence, whether the IDEA was violated." *B.S. v. Anoka Hennepin Pub. Schs.*, 799 F.3d 1217, 1220 (8th Cir. 2015) (citing *Pachl v. Seagren*, 453 F.3d 1064, 1068 (8th Cir. 2006)).

### V. PROCEDURAL HISTORY

31. Plaintiff Rosa Evans filed a due process complaint with the Nebraska Department of Education ("NDE")) against PLCS pursuant to 20 U.S.C. § 1415 and 92 Neb. Admin. Code § 55. The case was assigned Case No. 22-06 SE. An administrative due process

hearing was held on April 24, 2023, and a decision was rendered by the Hearing Officer on August 2, 2023.

32. The Hearing Officer ruled in favor of PLCS, finding that T.R.'s mother did not meet her burden of proof on all issues raised.

## VI.    FACTUAL ALLEGATIONS

33. Among T.R.'s disability-related challenges are difficulties with sustained social communication; often relying on a script for initiating social communication; difficulties with changes in routines or schedules; poor executive functioning skills; poor impulse control and attention deficits, including difficulty in paying attention and ignoring distractions; engaging in purposeless and repetitive behaviors; overreaction to sensory stimuli; and emotional distress when feeling overwhelmed.

34. Autism is a developmental disability that results in atypical development of social competence, atypical development of communication, and an atypical range of interests and patterns of behavior.

35. On several occasions during the past two years, T.R. has been observed by his mother, his mother's fiancé, and extended family members to have darted out into traffic or to have rushed out in front of cars in a manner that is unsafe.

36. Before T.R. started high school at Papillion La Vista High School in August 2021, the district provided busing for T.R. to and from Liberty Middle School because of the distance between his home and the middle school.

37. During T.R.'s final IEP meeting as a middle school student on February 11, 2021, PLCS representatives did not inform T.R.'s mother that T.R.'s transportation situation would change or that T.R. would no longer receive transportation as a high school student on the

basis of distance. Nor did district representatives engage in a discussion with T.R.'s mother about whether, on the basis of his disability-related needs, T.R. would require transportation to and from high school beginning in the fall of 2021.

38. His middle school IEP team engaged in no discussion of whether T.R. could safely and independently walk to and from the high school or whether he would need transportation as an IEP related service as a high school student.

39. Despite the fact that T.R.'s middle school IEP team never discussed whether he would need transportation for high school, PLCS decided during an IEP meeting at the high school on August 11, 2021 that because of the middle school IEP team decision on February 11, 2021, and because of a rubric used by PLCS in determining students' need for transportation, T.R. did not qualify for district transportation.

40. The rubric used by PLCS did not include factors relevant to students with neurological disabilities that affect their behaviors and skills in navigating.

41. T.R.'s home is approximately 1.2 miles—a 26-minute walk—from Papillion La Vista High School.

42. To get to school and from school, T.R. would have to cross a heavily-trafficked street, which has four lanes of traffic and a speed limit of 45 miles per hour. There is no pedestrian bridge.

43. Having to navigate heavy traffic each day while walking to and from school during peak traffic times would be highly stressful for T.R. because of his autism-related challenges.

44. In stressful situations, T.R. typically chews on his shirt, cries, flaps his hands, and may run away from the source of stress.

45. Navigating heavily-trafficked areas, particularly in extreme temperatures, causes T.R.

distress and poses challenges and risks for him due to the ways he is affected by autism.

46. Accompanied by his mother, T.R. made an attempt in August 2021 to practice walking the route from his home to the high school. T.R. became overheated and stressed, began crying, and sat on the sidewalk and refused for several minutes to move. T.R.'s mother took him into a nearby restaurant so that he could cool down and become calmer. Unable to complete the route, T.R. and his mother returned home. T.R.'s mother reported this experience to T.R.'s IEP team at the high school multiple times, beginning in August of 2021.

47. Because of PLCS's refusal to provide district transportation to T.R., his mother has had to rely on and pay her fiancé's sister-in-law to transport T.R. to school four days a week throughout the entirety of the 2021-2022 and 2022-2023 school years, as well as throughout the 2023-2024 school year to date. Plaintiff Rosa Evans has paid this individual $40 per school week to transport T.R. to school each year, for a total of $3,320 to date.

## VII. THE LEGAL FRAMEWORK

### A. IDEA

48. As explained by the U.S. Supreme Court, "The Individuals with Disabilities Education Act (IDEA) offers States federal funds to assist in educating children with disabilities. The Act conditions that funding on compliance with certain statutory requirements, including the requirement that States provide every eligible child a 'free appropriate public education,' or FAPE, by means of a uniquely tailored 'individualized education program,' or IEP. 20 U. S. C. §§1401(9)(D), 1412(a)(1)." *Endrew F. v. Douglas Cnty. Sch. Dist. Re-1*, 580 U.S. 386 (2017).

49. Further, according to the Court,

    The IEP is "the centerpiece of the statute's education delivery system for disabled children." [citation omitted]. A comprehensive plan prepared by a child's "IEP Team" (which includes teachers, school officials, and the child's parents), an IEP must be drafted in compliance with a detailed set of procedures. §1414(d)(1)(B). (internal quotation marks omitted). These procedures emphasize collaboration among parents and educators and require careful consideration of the child's individual circumstances. §1414. The IEP is the means by which special education and related services are "tailored to the unique needs" of a particular child. *Rowley*, 458 U. S., at 181, 102 S. Ct. 3034, 73 L. Ed. 2d 690.

    *Endrew F.*, 580 U.S. at 391.

50. The IDEA defines a free appropriate public education ("FAPE") as "special education and related services that… are provided at public expense, under public supervision and direction, and without charge… [and] are provided in conformity with an individualized education program (IEP)…." 34 C.F.R. 300.17.

51. The IDEA defines "related services" as "transportation, and such developmental, corrective, and other supportive services… as may be required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(26)(a).

52. With respect to school district personnel, the IDEA "vests these officials with responsibility for decisions of critical importance to the life of a disabled child…. By the time any dispute reaches court, school authorities will have had a complete opportunity to bring their expertise and judgment to bear on areas of disagreement. A reviewing court *may fairly expect those authorities to be able to offer a cogent and responsive explanation for their decisions*" regarding a student's IEP. *Endrew F.*, 580 U.S. at 404 (emphasis added).

53. Further, with respect to the development of a child's IEP, the IDEA "contemplates that this fact-intensive exercise will be informed not only by the expertise of school officials, but also by the input of the child's parents or guardians." *Id*. at 399.

**B. TITLE II OF THE ADA**

54. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II thus imposes program accessibility requirements on state and local governments. It requires these entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

55. The ADA defines disability with respect to an individual as "(i) A physical or mental impairment that substantially limits one or more of the major life activities of such individual…." 28 C.F.R. § 35.108(a)(1).

56. The U.S. Supreme Court has explained that the ADA "addresses substantial limitations on major life activities, not utter inabilities," and that "[w]hen significant limitations result from the impairment, the definition is met even if the difficulties are not insurmountable." *Bragdon v. Abbott*, 524 U.S. 624, 641 (1998); *see also Otting v. J.C. Penney Co*., 223 F.3d 704, 710 (8th Cir. 2000).

57. Refusing to make reasonable, necessary modifications with respect to policies, practices, or procedures, and instead requiring that disabled individuals incur difficulty, discomfort,

hazards, and risks in order to gain access to a public entity's programs or activities—when non-disabled persons are not subject to similar difficulties—constitutes prohibited disability-based discrimination. *See Basilios v. City of Torrance*, 166 F.Supp. 3d 1061, 1078 (C.D. Cal. 2015).

58. According to the United States Supreme Court, the ADA provides a "comprehensive" and "broad mandate" to eliminate discrimination against disabled persons, and "Congress noted that the many forms such discrimination takes include 'outright intentional exclusion' as well as the 'failure to make modifications to existing facilities and practices.' § 12101(a)(5)." *PGA v. Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001).

C. **SECTION 504 OF THE REHABILITATION ACT**

59. Section 504 of the Rehabilitation Act states:

> No otherwise qualified individual with a disability in the United States… shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance….

29 U.S.C. § 794

60. The implementing regulations for Section 504 provide that "(1) *Handicapped persons* means any person who (i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 34 C.F.R. § 104.3(j).

61. Section 504 requires that public school districts "shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33(a).

62. Further, "the provision of an appropriate education is the provision of regular or

special education and *related aids and services* that (i) are designed to meet individual educational needs of handicapped persons *as adequately as the needs of nonhandicapped persons are met*…." 34 C.F.R. § 104.33(b) (emphasis added).

## VIII. CLAIMS FOR RELIEF

**COUNT I**

**Federal IDEA and State Special Education Claims: Reversal of Hearing Officer's Decision**

63. Plaintiffs incorporate the foregoing paragraphs of this Complaint as though fully set forth herein.

64. Following the due process hearing requested by T.R.'s mother, the Hearing Officer rendered a decision on August 2, 2023. This decision was not based on careful and impartial consideration of all of the evidence and demonstrates a misapplication of special education law.

65. The Hearing Officer's decision is not supported by the evidence, and other evidence has been disregarded with no mention in the decision.

66. Pursuant to 20 U.S.C. § 1415(i)(2), Plaintiffs seek review judicial review of the Hearing Officer's decision dated August 2, 2023. Pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii), Plaintiffs also request that this Court hear additional evidence.

67. At the due process hearing, T.R.'s mother presented the testimony of three witnesses regarding the effects of T.R.'s disability-related skill deficits—such as lack of attentiveness and impulsivity—on his ability to safely walk near and around traffic in parking lots and on neighborhood streets. Specifically, this testimony included observations of T.R. darting out into the street in front of cars as recently as three months prior to the hearing. This testimony also included observations of multiple incidents when

T.R. ran out in front of cars in parking lots within the past school year. The Hearing Officer made no mention of this testimony or these incidents in the decision, and no mention of their relevance to an appropriate determination by PLCS as to T.R.'s need for district transportation. The Hearing Officer decision made no determinations as to the credibility of Plaintiffs' witnesses, but instead simply made no reference to this portion of their testimony entirely.

68. The decision of the Hearing Officer is not based on the laws and rules specified in the IDEA or in the Nebraska laws and regulations governing special education.

69. The Hearing Officer's decision misinterpreted and misapplied precedent from the United States Court of Appeals for the Eighth Circuit. In *Fick v. Sioux Falls School District 49-5*, 337 F.3d 968 (8th Cir. 2003), the parent of a child with a disability receiving district transportation requested that her child's school district drop her daughter off at her day care center instead of her home—even though the day care was located outside the boundaries of the child's school cluster site. The parent's request in *Fick* was made *purely* due to the parent's convenience and *not at all* due to the child's education-related need to be safely transported to and from school.

70. The Hearing Officer in this case erroneously framed T.R.'s mother's request for transportation for T.R. as one based on her convenience and not on T.R.'s disability-related needs. The decision cited *Fick* for the proposition that under the IDEA, "a school district may apply a facially neutral transportation policy to a disabled child without violating the law when the request for a deviation from the policy is not based on the child's educational needs, but on the parents' convenience or preference." *Fick*, 337 F.3d at 970.

71. Despite the U.S. Supreme Court's admonition that "[a] reviewing court may fairly expect [school] authorities to be able to *offer a cogent and responsive explanation for their decisions*" regarding a child's IEP, *Endrew F.*, 580 U.S. at 404, the Hearing Officer's decision made no reference to the contradictions between district personnel's testimony regarding whether the actual distance that a child must walk to school and the safety of the area are appropriate considerations for determining a child's need for transportation as a related service.

72. In the absence of an Eighth Circuit case enumerating factors that courts should consider in determining whether a child with a disability needs special education transportation as a related service, the Hearing Officer inappropriately applied the factors of an Eleventh Circuit case in a manner that incorrectly reflected some evidence while ignoring other evidence.

73. Specifically, the decision erred in ruling that a "free appropriate public education" does not need to be free, stating that "[e]ven if incapable of walking, [T.R.'s mother's] own evidence established [T.R.] had access to private assistance to get to school without walking," and that his mother's "payment [to an extended family member] for [T.R.'s] transportation does not change the analysis under federal caselaw."

74. The IDEA mandates that if a child needs transportation as a related service, that the school district must provide it. The Hearing Officer's decision erred by reading an ad hoc approach into the IDEA which does not exist and which would require a school district to provide *some* elements of FAPE for a child only when the child's parents could provide and pay for certain other supports. Instead, the IDEA places the responsibility of

providing and paying for FAPE on school districts, which are the entities receiving federal funds through the IDEA to do so.

75. The Hearing Officer erred further in strictly applying Eleventh Circuit caselaw and finding that the area through which T.R. would have to walk to school "weighs against transportation." In so doing, the decision makes no reference at all to the levels of traffic that T.R would have to navigate or the 45-mile-per-hour speed limit along the main road to the school.

76. The Hearing Officer likewise erred in applying Eleventh Circuit precedent and finding, without explanation, that "[T.R] has access to other forms of public assistance. This factor weighs against transportation," noting simply in the decision that the district had told R.E. generally about a "neighborhood app" where she might find information about carpooling with other families.

77. Plaintiffs are entitled to a reversal of the decision, an order compelling provision of special education transportation to and from school as a related service, a reimbursement of expenses incurred in paying for transportation during the 2021-2022, 2022-2023, and 2023-2024 school years, and an award of attorney's fees and costs.

**COUNT II**

**Title II of the Americans with Disabilities Act (ADA)**

78. Plaintiffs incorporate the foregoing paragraphs of this Complaint as though fully set forth herein.

79. Defendant PLCS is a "public entity" as defined in the ADA, 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

80. Transportation provided by a school district—as well as the educational services to which the transportation provides access—are among the services, programs, or activities provided by PLCS pursuant to the ADA. 28 C.F.R. § 35.130(a).

81. PLCS has excluded and continues to exclude T.R. from participating in and benefiting from its facilities, services, programs, or activities, and has otherwise discriminated against T.R.

82. The PLCS officials involved in refusing to provide T.R. with district transportation have exercised professional judgment in a way that departs grossly from accepted standards among educational professionals and have exhibited bad faith or gross misjudgment. *See I.Z.M. v. Rosemount-Apple Valley-Eagan Pub. Schs.*, 863 F.3d 966, 973 (8th Cir. 2017).

83. By knowingly requiring that T.R. incur substantial distress, difficulty, and risk in order to gain access to his high school—or that T.R.'s mother pay for services to prevent the same—PLCS has failed and is failing to meet its obligations to provide T.R. with an opportunity to participate in or benefit from the district's aids, benefits, or services that are equal to those provided to students without disabilities. *See* 28 C.F.R. § 35.130(b)(1)(ii).

84. PLCS's actions constitute intentional discrimination on the basis of disability in violation of the ADA in that the district has failed to maintain policies and procedures to ensure compliance with Title II.

85. In its refusal to provide T.R. with district transportation, PLCS has not appropriately considered T.R.'s individualized needs as a child with a neurological disability that affects his behavior and skill in navigating.

86. T.R. has a recent and ongoing history of darting out in front of moving cars due to the impacts on him of his disability. Navigating the route to and from school independently as a pedestrian would pose a risk to his safety.

87. T.R., left to navigate the walk to school each morning independently as a pedestrian, would arrive at school distressed and anticipating with further distress the need to complete the walk again each afternoon.

88. As such, PLCS has utilized criteria or methods of administration that have the effect of subjecting T.R. to discrimination on the basis of his disability, and that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the district's program with respect to individuals with disabilities—specifically, the instruction and inclusion of T.R. as a child with autism at school. *See* 28 C.F.R. § 35.130(b)(3).

89. PLCS's failure to meet its obligations to T.R. constitutes an ongoing and continuous violation of the ADA and its implementing regulations. Unless restrained from doing so, the district will continue to violate the ADA.

90. The ADA authorizes injunctive relief as appropriate to remedy acts of discrimination against persons with disabilities. 42 U.S.C. § 12188(a)(1).

91. T.R. is entitled to injunctive relief, compensatory damages, and reasonable attorney's fees and costs.

**COUNT III**

**Section 504 of the Rehabilitation Act of 1973**

92. Plaintiffs incorporate the foregoing paragraphs of this Complaint as though fully set forth herein.

93. As a school-aged child who lives in the Papillion La Vista Community Schools district, T.R. is qualified to participate in PLCS's educational programs and services. 34 C.F.R. § 104.3(l)(2).

94. By the acts and omissions alleged herein, PLCS has discriminated against T.R. in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, solely on the basis of disability.

95. PLCS has violated and continues to violate Section 504 by denying T.R. the reasonable accommodation of transportation that he needs in order to enjoy meaningful access to the benefits of public programs, services, and activities.

96. The provision of district transportation to T.R. would not fundamentally alter the nature of PLCS's services, programs, or activities. *See* 28 C.F.R. § 35.130(b)(7).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court:

1. Declare that Defendant PLCS has violated T.R.'s rights by denying him district transportation as a related service pursuant to the IDEA;

2. Declare that Defendant PLCS has violated T.R.'s right to be free from disability-based discrimination pursuant to Title II of the ADA;

3. Declare that Defendant PLCS has violated T.R.'s right to be free from disability-based discrimination pursuant to Section 504;

4. Enjoin Defendant PLCS from continuing to violate T.R.'s right to district transportation as a related service pursuant to the IDEA, as a reasonable modification pursuant to Title II of the ADA, and as a reasonable accommodation pursuant to Section 504;

5. Order Defendant PLCS to provide district transportation for T.R. to and from school each

school day for the remainder of his time as a PLCS student;

6. Order Defendant PLCS to reimburse Plaintiff Rosa Evans $3,320, the amount of out-of-pocket expenses she has incurred in having T.R. transported to school during the 2021-2022, 2022-2023, and 2023-2024 school years, as well as reimbursement for additional transportation costs incurred by Plaintiffs prior to the issuance of a decision in this matter;

7. Reverse the decision and order of the Hearing Officer dated August 2, 2023;

8. Award Plaintiffs reasonable attorney's fees and costs;

9. Order Defendant PLCS to immediately design and implement practices and policies to determine the need of students with disabilities for district transportation on an individualized basis; and

10. Grant any other relief for Plaintiffs that this Court deems just and appropriate.

DATED this 30th day of October, 2023.

s/ Amy K. Bonn
Bar Number: 23624
Attorney for Plaintiffs
The Law Office of Amy K. Bonn, LLC
2805 Leigh Lane
Papillion, NE 68133
Telephone: (402) 387-7293
E-mail: amy@amybonnlaw.com